UNITED STATES of America, Plaintiff,

v.

Douglas LANE, Defendant.

No. 84–CR–3.

United States District Court,
E.D. Wisconsin.

March 25, 1986.

———

Mel S. Johnson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Thomas E. Brown, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for defendant.

## ORDER

TERENCE T. EVANS, District Judge.

Douglas F. Lane, the defendant in this case, is waiting for a date to be resentenced. Now that proceedings in a related case, *U.S.A. v. Tony Machi and Frank Calarco* (85–CR–114), have been completed, it is appropriate that I take some action that will move the *Lane* case toward its conclusion. Before doing so, however, I want to make a complete record of the matters that have occurred in this very disturbing case. My comments will, of necessity, concern the Machi/Calarco matter.

Lane was convicted of conspiring to possess and distribute marijuana following a jury trial in my court on September 14, 1984. On October 31, 1984, he was sentenced to serve a term of imprisonment of four years. The sentence was stayed pending an appeal to the United States Court of Appeals for the Seventh Circuit.

On April 15, 1985, I had a meeting in my chambers with Agents Edward Miller of the IRS and James Dietz of the FBI. At the time of this meeting, Lane's appeal was still pending in the Court of Appeals. During the meeting, I was advised that Lane was cooperating with the government in an obstruction of justice investigation. The investigation, which involved a scheme to reduce Lane's sentence, centered on Tony Machi and Frank Calarco. Surreptitious tape recordings of conversations involving Lane, Machi and Calarco were played for me during the meeting, which was the first time I heard anything about what was going on.

On June 27, 1985, the Court of Appeals affirmed Lane's conviction and returned the case to me for further proceedings. On August 14, 1985, Machi and Calarco were indicted for obstructing justice. Subsequently, I granted the joint request of the government and Lane that his sentence be modified, as Lane, according to the government, was to be a key witness against Machi and Calarco. I did not, however, go as far as both sides urged me to, as I declined the joint request to put Mr. Lane on probation at that time. Instead, I vacated Lane's original sentence and said I would schedule resentencing after the Machi/Calarco case was resolved.

Mr. Machi and Mr. Calarco went to trial on January 13, 1986 before Judge Robert W. Warren. Lane testified during the trial as a witness for the government. The jury found both Machi and Calarco guilty. On February 28, 1986, Machi and Calarco were each sentenced to serve terms of five years in prison.

A review now of Lane's involvement in the Machi/Calarco case is appropriate, as is a review of the question of whether or not I should continue to preside over the *Lane* case. Most of the factual statements that follow come from the record developed in the Machi/Calarco case.

Lane's trial attorney was Thomas Brown. Sometime late in January, 1985, Lane went to Brown and told him an unusual story. Lane said that some weeks before, while driving on the east side of Milwaukee, he decided to stop at "Teddy's", a bar and nightclub located on North Farwell Avenue. Teddy's was owned by Machi, and Lane stated he stopped there in order to see if Machi could pay him any of the $5,000–$7,000 Lane said Machi owed him on a previously made loan. As they talked, Lane said he explained his legal situation, and Machi told him he should have come to him earlier. Machi said he thought he could help Lane with his sentence, and he asked Lane how much it was worth to him. Lane said he had no idea, since he did not know what Machi was proposing. Machi, again according to Lane, pressed for an answer, and Lane said it would be worth $10,000–$30,000. Machi said he would get back to Lane.

Over the next few days Lane said he received several telephone calls from Machi. Machi, according to Lane, stated he had talked with influential people and had some interesting information. He asked Lane to meet with him and bring a tran-

script of Lane's trial. Lane met with Machi at Teddy's and gave him a transcript. Machi stated he had made contact with people "out east." He guaranteed Lane that, for $50,000, Lane's 4-year sentence would be reduced to 15 months. Lane stated he asked for particulars from Machi, who told him he would get back to him. Machi told Lane not to discuss this with anyone. At this point, Lane says he decided to go to his attorney, Mr. Brown.

After hearing Lane's story, Brown, according to Lane, said he should either stay away from Machi or go to the government with the information, since the government might be interested in investigating what seemed to be an attempt to "fix" Lane's sentence.

After talking with Brown, Lane says he went to see Machi pursuant to an appointment previously made. At the beginning of their conversation Machi frisked Lane, looking for a recording device. Lane, of course, was not wearing one. According to Lane, Machi seemed very confident during the meeting. He repeated his statement that a reduction from 4 years to 15 months would be guaranteed upon the payment of $50,000. He raised the possibility of reducing the sentence to an even lower figure for more money. Machi said he would hold the money until the sentence modification had been achieved. Lane said he would look into raising the money. Machi told Lane to tell no one, because if he did it would not be very healthy, since the people they were dealing with were very "heavy." All of the statements thus far attributed to Machi come from Lane. At this point, they were not corroborated.

After the last meeting, Lane says he decided to contact the government. He spoke with the Special Agent of the Internal Revenue Service who had initially investigated his case. After Lane explained the situation, the agent said the government would be interested in investigating the matter but Lane would have to cooperate in recording conversations with Machi in order to verify what was being said. Lane agreed to do so.

The first recorded conversation occurred on March 1, 1985, when Machi called Lane and left the following message on Lane's telephone answering machine:

MACHI: Doug, this is Tony. Tony Machi. Will you give me a jingle the first chance you get, please? I'd like to talk to you, bye.

Lane returned Machi's call at 3:00 p.m., on March 1, and the following occurred:

MACHI: Hello, this is TEDDY'S.

LANE: TONY.

MACHI: Yes.

LANE: Hi, this is DOUG LANE calling.

MACHI: Yeah.

LANE: How ya doin'?

MACHI: I ... you're in town I hear.

LANE: Yeah. I just got back last night.

MACHI: Well, will ya will ya come over and see me, please?

LANE: Uhm, uh, I'm gonna hafta, can we make it Monday?

MACHI: Are you here in Milwaukee, now?

LANE: Yah.

MACHI: Well, why don't ya come over.

LANE: Oh, it's gonna be hard to do right now.

MACHI: Why?

LANE: Because, uh, it's my sister's wedding on Sunday and I just have all this stuff to do.

MACHI: You mean you can't you can't come over here and spend five minutes with me?

LANE: (whew) Yeah, I guess I could.

MACHI: What the fuck is the matter with you, you goofy or what?

LANE: No, I'm not. You you it's it's just

MACHI: Where the where the fuck you got your priorities?

LANE: Well, it's not that it's just that

MACHI: Well fuck your ass it's that

LANE: All right.

MACHI: You ask somebody do something and they and well I won't talk to you. When I see you I'll talk to you. When you gonna come over?

LANE: Ah, I'll be over there uh probably about fifteen twenty minutes.

**1166**

MACHI: Okay and I got your stuff too here.

LANE: Oh, Okay, good.

MACHI: Okay my boy.

LANE: All right. Thanks.

Two questions that arise in this matter are (1) who initiated the discussions regarding sentencing modification, and (2) who pushed the deal? While the answer to the first may never be conclusively know—I would not believe Lane on matters that were not corroborated—the answer to the second seems clear. It was Machi.

Shortly after the call, Lane went to Teddy's wearing a body recorder. A portion of their ensuing conversation is printed below. In quoting, I have decided to leave in all the *fuck*'s and *fuckin*'s, as the tone of the conversation is better grasped by not cleaning up the language. However, some *er*'s, *huh*'s, *ah*'s and other words that add nothing to the context have been deleted. The conversation went like this:

LANE: Hello there.

MACHI: Hey, hi, Doug ... What's up with your lawyer?

LANE: Huh?

MACHI: Talk to your lawyer. Have your lawyer call up. Tell him you wanta go up there for resentencing, you know.

LANE: Uh huh.

MACHI: See how fast he can react, okay.

LANE: All right.

MACHI: That's all. Don't tell him a fucking thing now.

LANE: Okay. All right.

MACHI: When you know about, when you gotta, ... you got a week, when they tell you the date, because this guy will find out the date ... the week before then I want the fucking money, okay.

LANE: Yeah.

MACHI: And, your money be fucking secure until you get.

LANE: All right.

MACHI: His okay from the guy.

LANE: All right.

MACHI: Til then you're fucking okay. Til you get your okay.

LANE: Okay.

MACHI: Then you tell them, when you say, give them the money Tony, I give 'em, otherwise nobody gets no fucking money, you get a break and fuck them.

LANE: All right ...

MACHI: Okay.

LANE: I just got to ask you a few questions.... I just forgot Tony, I just can't figure out.

MACHI: How it's gonna be done.

LANE: Ya.

MACHI: Ha, listen, you got nothin' to fuckin' lose, okay?

LANE: Right.

MACHI: You ain't got a fuckin' dime to lose my boy.

LANE: Right.

MACHI: You got nothing to fuckin' lose. You do what I tell you, okay.

LANE: Okay. Well.

MACHI: You ain't lost nothing.

LANE: But how, how, how the hell.

MACHI: I don't know, don't ask me, I don't know. But then you know what, then prepare yourself, you're, ... going to be there a very fuckin' short time.

LANE: Yeah.

MACHI: Okay?

LANE: Yeah.

MACHI: Prepare yourself to give this guy to spend some $10,000 bills.

LANE: All right.

MACHI: Okay.

LANE: What was that, $10,000 a month.

MACHI: Yes sir.

LANE: Yeah, for every month below what? I can't remember.

MACHI: Yeah.

LANE: Run that by me again.

MACHI: Below, I tell you what you do. I tell you what you told me. He didn't want, ... he didn't like that, because that was not the original deal.

LANE: Yeah.

MACHI: You told me $10,000 after 14, but then again you, you corrected, you said $10,000 after 10, and I said after 10.

LANE: And so anything below 10 months.

MACHI: Yeah, you said $10,000 a month, okay.

LANE: Okay.

MACHI: All right. Be prepared to serve very few months, that's what they tell me, okay.

LANE: Okay.

MACHI: You don't know how they gonna do it.

LANE: all right.

MACHI: And I don't give a fuck, I don't care, I don't ask questions.

LANE: But how do you know this works? I mean has it worked before?

MACHI: Hey, fuckin' a, it's worked before.

LANE: Ah.

MACHI: Absolutely its worked before.

LANE: Because, okay.

MACHI: Let me tell you something.

LANE: Yeah.

MACHI: Between you and I. That fuckin' dumb Balistrieri, cocksucker that he is.

LANE: Yeah. Blew it huh?

MACHI: Could have got two years and his kid could'a walked.... Now he's got eight years and his kids are in the ...

LANE: That all that he got was eight? I thought he'd be in there forever.

MACHI: Well, (laugh) He's gonna have to serve eight years. He got 13 years.

LANE: Yeah.

MACHI: He's gonna have to serve 8 years, okay.

LANE: Yeah.

MACHI: This is what they tell me, okay, and I don't ... know it. What the fuck do I know, you know.

LANE: Well, see, okay now, the only one that can make that decision. The only guy that can make that decision is the judge, as far as I know.

MACHI: Yeah. Okay, so don't worry about it.

LANE: Well, if the judge's best friend.

MACHI: I don't give a fuck.

LANE: In the world is ...

MACHI: Just a minute, though. He gets orders from some place higher. He's

looked over, he's looked over, this guy, he recommends da da ...

LANE: Yeah. Now what?

MACHI: Okay.

LANE: Yeah.

MACHI: You think for a moment that these judges don't get orders ... from Washington?

LANE: Yeah ...

MACHI: You take a guy like one of the guys that was with Balistrieri, a guy whose name was Steve Di Salvo.

LANE: Uhuh.

MACHI: All he had is that he met Librizzi, in a parking lot. They didn't even see no exchange or nothing at ... St. Michael's Hospital.

LANE: Uhuh.

MACHI: Okay.

LANE: He got nailed just on that alone.

MACHI: Just meeting 'em.

LANE: Yeah.

MACHI: Just meeting with 'em. He got eight years.... Just meeting with 'em. They didn't want to do that. He got orders from Washington.

LANE: Yeah.

MACHI: Nail this cocksucker. Give it to 'em, okay.

LANE: This judge really, ... had it out for me. I can't see how he could change his mind.

MACHI: All right, okay.

LANE: Uh, you know.

MACHI: Look, ...

LANE: In my mind, okay let me say it. Uh, my attorney's partner is Frank Gimbel, and he's the judge's best friend ...

MACHI: I know ... all about that. I know, I see 'em.

LANE: So if he can't do it.

MACHI: I see.

LANE: How can this guy?

MACHI: I see 'em ... I see 'em dining together.

LANE: Yeah.

MACHI: Frank and them. I see 'em dining together.

LANE: If Frank can't do it, how can somebody else.

MACHI: I seen 'em. I said hello Frank, hello judge.

LANE: Yeah.

MACHI: I mean, I been in that position.

LANE: Yeah.

MACHI: I understand where you're coming from.

LANE: Then how could—

MACHI: I don't know.

LANE: Yeah.

MACHI: I don't know, my dear boy.

LANE: All right.

MACHI: All it's gonna take you is $50,000 for a fuckin' week.

LANE: Yeah.

MACHI: If it don't go. It goes right back to Doug's 'cause I don't want no part of one. I love you.

LANE: Yeah.

MACHI: And I don't want ... and I want to protect myself on the other. That's what I'm telling you.

LANE: All right.

MACHI: That you and I ... I gotta fuckin' feeling you're gonna serve about three months. This is my honest opinion.... Because these guys fuckin' operate. I'm just telling you, pal.

LANE: All right, now what about this one other thing we'd talked about as far as this money and safety deposit box. Do you have any objection?

MACHI: Yes, I do.

LANE: Why:

MACHI: Because I'm just, ... a little uncomfortable, okay.

. . . . .

LANE: Well, why not get a joint safety deposit box for everyone. What's wrong with that?

MACHI: I'm afraid, ... to put my fuckin' name on it.

LANE: Well, I don't blame ya. Is there anybody you can trust to do that?

MACHI: No, no.

LANE: But, ah, ... that's the one problem I have.

MACHI: The only problem, look ... I'll give you a fuckin' note, I'll give you anything you want just to protect you.... All right. I'll give you a fuckin' note for it to show you that ...

LANE: Yeah.

MACHI: You and I could make a fuckin' note any way you want to make it, okay?

LANE: All right.

MACHI: I'll ... protect you, don't worry about that.

LANE: Okay.

MACHI: Okay.

LANE: Well, let me see when I can ... start working this. Don't go commit yourself one hundred percent now. Until I know I got the money.

MACHI: Let me tell you something, my dear boy. These guys don't fuck around now you know.

LANE: Yeah.

MACHI: They want action, because they ... already let it. They've gone to some extent.

LANE: Yeah.

MACHI: Fact of the matter is he was a little bit perturbed that he had to wait this fuckin' long.

. . . . .

LANE: All right, um, but, I mean, are you sure this has, ... definitely has worked before.

MACHI: See, I'm not dealing with no punk.

LANE: Yeah.

MACHI: Okay.

LANE: Yeah.

MACHI: Hey, look, Doug, look me straight in the eye ..., okay?

LANE: Yeah.

MACHI: If it doesn't work it cost ya anything?

LANE: No.

MACHI: Okay?

LANE: Yeah.

MACHI: That's all I'm telling ya, Doug.

LANE: Yeah.

MACHI: Okay.

LANE: All right.

MACHI: That's all I'm telling ya. If it doesn't work, it ... doesn't cost a fuckin' dime.

In this recorded conversation Machi confirms the $50,000 figure. To puff up the claim, Machi goes so far as to tell Lane "That fuckin' dumb Balistrieri, cocksucker that he is. Could have got two years and his kid could'a walked." This is an obvious reference to Frank Balistrieri and his sons, Joseph and John. They were convicted in this court in 1984. Frank Balistrieri is serving a 13-year term, while Joseph and John are serving terms of 8 years each.

In explaining how the sentence reduction will be accomplished, Machi tells Lane that I as the judge in his case will get "orders from some place higher." Machi tells Lane "you think for a moment that these judges don't get orders ... from Washington?"

Machi also is cautious. When Lane suggests putting the money in a joint safe deposit box, Machi says "I'm afraid to put my fuckin' name on it." Lastly, Machi urges quick action by Lane, telling him "These guys don't fuck around now you know. They want action ... Fact of the matter is he was a little bit perturbed that he had to wait this fuckin' long." A clear picture is starting to emerge. Much of what Lane told Attorney Tom Brown is being corroborated.

On March 11, Lane again met with Machi. The conversation was recorded. Lane has stated that Machi seemed somewhat suspicious and less willing to discuss the scheme. One significant aspect of this conversation, however, was when Lane indicated it would be legally impossible for his sentence to be modified by the District Court in Milwaukee while his case was still on appeal in Chicago. Machi says he would look into the matter.

Machi and Lane met again on March 13, but Lane, stating he feared detection, told the agents that he did not want to wear a recording device. He didn't, and what Lane says occurred during that meeting, because it is uncorroborated, will not be repeated here.

The next recorded conversation took place on March 21. During that conversation, the following is said:

MACHI: You go for fuckin' modification right fuckin' now. I'm telling you you're gonna, you'll be pleasantly surprised. You'll get that fuckin' reduction. It's done, the work is done.

LANE: Yeah, Tony, I know, I know.

MACHI: Either you make up your mind now or I'm gonna, I'm droppin' out of it.

LANE: Okay.

MACHI: I'm droppin' out of it right, I can't, you're pressuring me, okay.

LANE: I know. I know, and I don't wanna, ... do that to you.

MACHI: If you want it, you got it. If you don't want it, forget about it. Then you gonna get the full month load, and you're gonna get the four years in ... Chicago for sure.

LANE: Yeah.

MACHI: Ain't nothin' gonna happen there.

LANE: ... You don't understand, it's not ... so much the money as its my whole life, right.

MACHI: I just got through telling you.

LANE: I know this, I know.

MACHI: I'm giving you the fuckin' word.

LANE: I know. The difference between me doing it now is that I wouldn't even have to go in for my sentence reduction in October. So it's like five or six months' difference in my life. All I'm saying is why is the pressure so much to do it right this second as compared to five months from now.

MACHI: Your work is all fuckin' done.... It's all done. Once you start something ... you can't leave it fuckin' hanging.

LANE: What do you mean?

MACHI: When the work is done. I mean ... it's done. Everything is all set.

LANE: Well, does the judge know this yet?

MACHI: Fuck the judge ... you just go and do what I tell ya.

**1170**

LANE: I know, I know.

MACHI: ... No, the judge don't know. The judge don't know fuckin'. He'll get ordered.

LANE: From who?

MACHI: I don't know and I don't give a fuck, and you don't know and you don't give a fuck.

LANE: Yeah, but I do ... if I just knew, could you just give me somethin' to sink my teeth into?

MACHI: Oh, I can't tell you that cause I don't know.

.   .   .   .   .

LANE: Well, how do you know they're gonna come through for you?

MACHI: Cause I know the ... guy who ... I talk to, okay. He's not a ... fuckin' guy Johnny come lately.

LANE: Look, I would say let's go, but I—

MACHI: Do you wanna know something? He's better than that fuckin' guy that you've got, okay.

LANE: Is he, is he an attorney?

MACHI: I don't, ah, I'm not gonna commit myself.... He'll run ... rings around the guy that you've got, okay.

.   .   .   .   .

LANE: Could you just give me some idea of how ... I'm gonna do it, or just what.

MACHI: Yeah, yeah, the only idea is you go there and ask for modification of sentence, that's all.

.   .   .   .   .

MACHI: ... you withdraw, with draw your—

LANE: My appeal.

MACHI: Your appeal. You go for a modification of sentence.

LANE: Right, right.... The judge, the judge has gotta be told that, right?

MACHI: He'll get. ... the word.

LANE: But I mean, the judge isn't gonna wanna do it.

MACHI: He'll do it, ... He'll get the word....

.   .   .   .   .

LANE: Okay, okay, let me just explain it real quick. Evans is such a straight shooter. I ... can't help but feel he is. How's he gonna do that?

MACHI: I don't know.

Static noise in the background makes part of the March 21 conversation unintelligible. The part that can be heard, however, adds further to the claim that Machi is the prime mover. In no uncertain terms he tells Lane "everything is all set" and that he must go "for fuckin' modification right fuckin' now." If he does, Machi explains, Lane will "... get that fuckin' reduction. It's done, the work is done." When Lane asks "Does the judge know this yet?", Machi says "Fuck the judge ... the judge don't know fuckin'. He'll get ordered."

The next meeting between Lane and Machi, which was recorded, took place on March 26. During that meeting Machi again pressed Lane to go along with the scheme Machi had outlined. During the March 26 conversation Machi says:

MACHI: I ... told you a long time ago you're not dealing with fuckin' assholes.

LANE: Yeah, I know.

MACHI: You're dealing with heavy people, okay.

LANE: Yeah.

MACHI: You go in there like I told you, then be prepared to go to jail in two or three, four days. You ain't gonna have no time. Okay?

LANE: Yeah.

Lane again questions how the scheme is going to work, and whether the judge will go along with it:

LANE: Well, does the judge know about this yet?

MACHI: Oh, fuck the judge. If you're ever gonna tell me about the judge, who gives a shit about the judge? He'll, later on he'll—

LANE: But somebody's got to tell the judge to do this and why is the judge gonna do it. Just because the government tells him to?

MACHI: That's right. And he'll do it. What the fuck is that?

LANE: But why?

MACHI: ... why he reviewed this case and so forth and so on. We think it is too ... stiff.

LANE: The judge will say that.... Or the government is gonna say that.

MACHI: Uh, what the fuck. Why it's just common sense tells you that. Hey, those cocksuckers can do any fuckin' thing they wanna do. Or they could even say hey, this guy's gonna cooperate with us. They can say any fuckin' thing they want to say.

Lane continues to express apprehension about whether the scheme will work during the balance of the March 26 conversation. Machi continues to reassure him that it will.

The next afternoon Lane received a call from Machi in which Machi said Lane should be expecting a call from someone named "Jay" who would straighten Lane out about the case. About 15 minutes later, Lane receives a call from a man who identifies himself as "Jay". The caller really is Attorney Frank Calarco. During this conversation, which was recorded, the following occurred:

LANE: Hello.

FRANK CALARCO (USING THE NAME "JAY"): Yeah, this is, ah, Jay.

LANE: Hi, how ya' doin'?

CALARCO: Okay, now, ah, I don't know what ... except he asked me to do something and I don't want to get into many details 'cause you know what it was that he asked.

LANE: Right.

CALARCO: And that's been done.

LANE: Uh huh. Okay.

CALARCO: But the only problem there is that they expected you to go there, ah, eight to ten days ago, and you haven't done it.

LANE: I know.

CALARCO: Now, I didn't know until he told me last week that you're under appeal.

LANE: Yeah.

CALARCO: But ... that still doesn't mean anything, you can withdraw the appeal.

LANE: Uh huh.

CALARCO: And you can go to your attorney whoever he is and you tell him to bring the motion, ah, that you wanted to notify the court you're withdrawing the appeal, you wanna bring the motion to modify the sentence and to be sentenced.

LANE: Yeah.

CALARCO: Now, that's already been done and if your lawyer should say well, geez, if you don't wanna do this, you just tell him that you and your wife have talked about it and you wanna be sure that, ah, you're out by Christmas time.

LANE: Uh huh.

CALARCO: And that's the end of it. Now, that's been done. Now, ah, Tony also mentioned something about once you're there, there's certain things ... can be done for you once you're there. You have to wait about 30 days, may 45 days.... and then some other things can be done for you, like moving you closer or getting you into a farm.... or getting you on some work release.

LANE: Yeah.

CALARCO: Ah, get in touch with some ... there's a lawyer in Detroit that handles those kinda things.... But I can't tell ya anything. All I can tell ya for sure is I don't know about the appeal. I won't make any comment on that. The other is that you will not get any favors from that court without this favor.

LANE: Yeah. Uh huh.

CALARCO: The rest is up to you, but I wanna know so I can notify this man because I think that he ... has already done ... what Tony asked him to do.

LANE: Ah, see, ya know ... as I explained to Tony, my problem was ... this, I just thought that it would be

like setting off a red flag to these guys.

CALARCO: No, don't you worry about that. That has nothing to do with you. That has nothing to do with your lawyer, and you don't tell your lawyer anything.

LANE: Oh, yeah, he doesn't ...

CALARCO: All you tell your lawyer is you want a motion to modify.... Now, we're tryin' to even get you less time than the 15 months. That you're guaranteed.

LANE: Yeah.

CALARCO: Well, I just, ah ... your lawyer is the last person to know and all you tell him is that you and your Mrs. —are you married?

LANE: Yeah.

CALARCO: Ah, you tell him you and your Mrs. have decided that you got a one in a million chance of winning the appeal, which is true.

LANE: Yeah, I agree with that.

CALARCO: And you think that you wanna go take your medicine now because you wanna be out before Christmas or around Christmas.

LANE: Uh huh. Well you see, ah, ... Evans really, I got the feeling obviously from a four-year sentence. he really dislikes me and I, I just can't figure out how he's gonna sit there and ...

CALARCO: I don't know that there, I, ... don't know what to tell you except to tell you that what you asked for has been done.

LANE: Uh huh.

.    .    .    .    .

CALARCO: But you have to act soon.... This thing isn't gonna stay extenuated this long, that I can tell you.

LANE: Uh huh. Oh, boy.

CALARCO: See to hold this open, this long gets too many noses in it, then it can't be done anymore.

LANE: Yeah. But in the long run, somebody is going to have to say to Evans go reduce this, right?

CALARCO: Somebody's already gonna do that.

LANE: Uh huh.

CALARCO: And it has nothing to do with you.

LANE: Okay.

CALARCO: Nobody will be talking to you except the people that know what's going on here.

LANE: Yeah.

CALARCO: But you're the only person that knows that and never should repeat that to anybody.

LANE: That's right. I know this and nobody knows it. There were two guys that have been on my case for the last three or four years, one guy from IRS. One other guy, well, just the ... DA or whoever it was trying to prosecute me. They are the ultimate ones, I thought, that had to make the decision as far as whether to agree with this.

CALARCO: Okay. All I can tell you is I understand your reticence ... and I understand what you're saying.

LANE: But how do you get by these guys?

CALARCO: Don't you worry about that. That's like me asking you how did you ... open that door.

LANE: Yeah.

CALARCO: As long as it's open, what do I care and I'll walk in it.

LANE: Yeah.

CALARCO: It's been done.

LANE: Uh huh. All right, and then somebody is just gonna notify the judge and everything is taken care of?

CALARCO: No, everything is all set. All you have to do is tell your lawyer what I'm just telling you.

LANE: Uh huh.

CALARCO: Withdraw the appeal, bring a motion to modify the sentence, and you should bring that immediately and when you say, then you tell him that you want him to tell the judge.... Your honor, my client wants his sentence modified and he would like, and he wants to, he's withdrawing the appeal because he's hoping that you will

modify the sentence and then he will go in and take care of it because he would like to be out on the holidays for his family.... Tell him that. If you tell him he's your lawyer, he has to do what you tell him.... Some of these lawyers, this has been done other times.... Some of these lawyers say well what the hell, you know something I don't know and you say no, I don't know anything you don't know. All I know is this. I know I'm not going to win the appeal and my wife and I ... are, we talked about it and ... want to get it over with now. I don't want it hanging over my head.

LANE: Yeah and, ... ah, do you feel that I'll have to go in right away?

CALARCO: You can ask him then to ask the court to give you ... well, you better know what you wanna do because they won't give you more than two or three days to clean up your affairs.

LANE: Uh huh. Okay. All righty, ah, God, ya know, I ...

CALARCO: I don't know what to tell you, my friend, except this, that this friend of yours over here is a good friend of yours ... He came to us and what he wanted is done, it's 33 months less than what you had.... And chances are there's something else can be done for you, but I can't promise you that.

LANE: But you're, ... positive ...

CALARCO: I'm positive about the first part.

LANE: Uh huh. Boy, it just seems hard to imagine.

CALARCO: Well, there's a lot of things that are hard to imagine. It's hard to imagine looking at that transcript that you got beat the way you did.

LANE: I know ... I agree ...

CALARCO: Ah, the people that looked at it can't understand it.

LANE: Yeah, in other words, I should have won it.

CALARCO: Damn close to it.

LANE: Yeah. Yep, that's kind of what I felt too, don't ask me. It was, ah, it was very ...

CALARCO: Well, that's why you got something going for you. Well, anyway, you gotta do this. If you're gonna do it, you have to do it, you gotta get in there. I can't ... hold this thing with these people much longer than Monday and I'm gonna tell you that not to put any pressure on you, but this was done two and a half weeks ago.... Two and a half weeks ago they expected you to be there withdrawing and making your motion to modify, but no one, nothing happened.... I got three calls since then and I'm gonna get one more tomorrow, ah, Friday night and by that time, you should have been to your guy and told him this is what you and your Mrs. decided. Now, that's the only way you cure these lawyers.

LANE: Yeah.

CALARCO: These criminal lawyers here they wanna know everything. They think they know everything and they don't know a fuckin' thing.

LANE: Ya know, I tried to briefly run it, ya know, not run by what's goin' on, but say to him, look, I wanna do this and he said, look, you're ... fuckin' crazy.

CALARCO: No.

LANE: You can't do this.

CALARCO: You tell him you want him to bring a motion to modify your sentence and to withdraw the appeal because both you and your wife have decided that if you get lucky, that you know you're not going to get lucky on the appeal and if you get lucky on the modification, that you'll be home for Christmas and you wanna take your chances that way.

LANE: Yeah. But you don't think these two guys that have been on my case they're gonna say, hey, wait a minute, something ...

CALARCO: They don't know a fuckin' thing.

LANE: Well, won't they have something to say about it?

CALARCO: Absolutely nothing.

LANE: You mean somebody can overrule them?

CALARCO: Absolutely.

LANE: All right.

CALARCO: Doug, believe me.

LANE: Okay.

CALARCO: Okay?

LANE: All right, I'm gonna, ah ... give my attorney a call right now.

CALARCO: Okay.

LANE: All right, see what I can do.

CALARCO: All right, bye.

LANE: All right, bye.

Since Calarco indicated he would be receiving a call from "these people," a decision was made by the government to seek a court order to put traps on Machi and Calarco's telephones. A court order was obtained on Friday, March 29. It was taken to the Telephone Company around 4:00 p.m. that afternoon. Machi and Calarco later admitted that at about 6:00 p.m. on March 29, 1985, each received a call from a person identifying himself as a bookmaker named Al Martin[1]. "Martin" told them to stop whatever they were doing because their phones were now tapped. Because they were tipped off, the scheme came to a halt.

It is very serious business indeed to tamper with the process of justice in general, and the sentencing of defendants in particular. Our system of justice places the ultimate sentencing responsibility on judges. Most judges agree that the exercise of that responsibility is one of the most difficult aspects of the job. Attempts to corrupt that process cannot be tolerated. Even acts like those of Machi and Calarco, acts that appear to be no more than a scam, must be condemned. They cheapen the process and besmirch those involved in it.

Douglas Lane has undoubtedly aided in bringing to light a deplorable and sleazy scheme. The fact that no actual attempt to "fix" the sentence was made does not lessen the value of his service. Lane's motives, of course, were not altruistic. He is interested in justice and the integrity of the system in the same way Ferdinand Marcos is interested in honest elections. He acted, quite clearly, to save his hide. Although Lane himself may be an unsavory sort, it is the nature of cases like this that it takes a thief to catch a thief. For that reason, it would appear that Lane is entitled to consideration.

As I said on page 1164 of this decision, this has been a very disturbing case. What if Lane had gone along with Machi's deal? What if Lane and his attorney, Mr. Brown, filed a motion for a reduction? What if I had a change of heart and decided that my original 4-year sentence was too harsh, considering the fact that a co-defendant, John Tamarri, had received a sentence from me of 15 months? What if, looking to the differences between those sentences, I acted favorably on the request and reduced Lane's sentence to 3 years, 2 years, 15 months, or something even less, believing that a shorter sentence was, upon reflection, more just.

Had this scenario been played out, Machi and Calarco would have had their $50,000, and Lane would have got what he believed he paid for and what they had "guaranteed". It is just like the shoddy old scam played out by the crooked lawyer with savvy enough to know that in the normal course of events a particular defendant will almost inevitably be placed on probation. Before sentencing, he tells the defendant that he needs an extra $1,000 for the judge to guarantee that he will get probation. The judge, looking to the merits of the case, puts the defendant on probation—the lawyer pockets the money and the defendant, unaware that he was bilked, leaves the courthouse a free man, but one convinced that he is free only because the "fix" was on. Schemes of this nature are, as Judge

---

**1.** "Martin" turned out to be John Grohall, a Telephone Company employee, who was subsequently charged and convicted in Federal Court of leaking information about the taps to Machi and Calarco.

Warren noted when he sentenced Machi and Calarco, insidious. They go to the core of the integrity of the process.

Because I have such strong feelings about this case, I have decided that it is best to transfer Lane's sentencing to Judge Warren. Judge Warren has agreed to accept it. Judge Warren, I believe, will be better able than I to decide what consideration is due to Douglas Lane.

Accordingly, IT IS ORDERED that this case is transferred to Judge Robert W. Warren for further proceedings.